# NOTICE: SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
NOVEMBER 24, 2021

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
NOVEMBER 24, 2021

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 99147-2 |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| FRANCISCO RUBEN MORENO, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed: November 24, 2021 |

JOHNSON, J.—This case presents the sole issue of whether knowledge of unlawfully entering or remaining is an implied essential element of first degree burglary. Francisco Moreno was convicted of first degree burglary, which is defined by statute and requires the State to prove that an accused (1) entered or remained unlawfully in a building, (2) with an intent to commit a crime. RCW 9A.52.020(1). On appeal, Moreno argued that both the charging document and jury instructions were constitutionally deficient because they omitted the implied essential element of knowledge of the unlawfulness of his entering or remaining.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Moreno*, No. 99147-2

The Court of Appeals affirmed Moreno's convictions, concluding that no implied *essential element* exists for first degree burglary. We affirm the Court of Appeals.[1]

FACTS & PROCEDURAL HISTORY

Moreno's burglary conviction resulted from him assaulting Ashley Vollmar after breaking into a townhome owned by Vollmar on April 8, 2018. Vollmar and Moreno began a relationship and started living together in the townhome in August 2017. Vollmar testified that she told Moreno he could no longer live in the townhome in October 2017 and that she changed the locks. Because Vollmar found out that she and Moreno were expecting a child, she attempted to continue their relationship. Nonetheless, she ended their relationship in January 2018.

Moreno disputed the length of their relationship in addition to when and whether Vollmar prohibited him from living in the townhome, and Moreno's primary defense to the first degree burglary charge was that he was authorized to be in the townhome. Moreno testified that he lived with Vollmar in the townhome up to the time of the incident on April 8, 2018. He also contended that Vollmar had never changed the locks. He testified that he split home expenses with Vollmar, that he kept his personal belongings and cars at the townhome, and that he picked up his tribal checks there.

---

[1]The Washington Association of Criminal Defense Lawyers filed an amicus brief in support of Moreno.

2

*State v. Moreno*, No. 99147-2

Vollmar testified that on the day of the incident, she retrieved a car Moreno had taken from her earlier that week after he had picked up a tribal check, which was being sent to the townhome. She and Moreno spoke on the phone, and Moreno insisted on coming over, despite warnings from Vollmar that he was not welcome. Moreno threatened Vollmar over the phone. As Vollmar called 911, she heard her door being kicked in. She explained that Moreno came into her bedroom where she was with her son, held her down by her neck, and took her phone. Moreno grabbed Vollmar's hair as she tried to get up, but Vollmar was eventually able to break loose. Vollmar testified that as she ran downstairs, Moreno grabbed her again, causing her to fall on her knees and stomach. Vollmar was pregnant at the time of the assault.

Moreno was charged with first degree burglary aggravated by domestic violence against a pregnant victim, fourth degree assault with domestic violence, and interfering with reporting domestic violence.[2] The charging document stated, "That the defendant, on or about the 8th day of April, 2018, with intent to commit a crime against a person or property therein, did enter and remain unlawfully in the building of Ashley Vollm[a]r's residence." Clerk's Papers (CP) at 162. The "to convict" jury instructions repeated the charging language and stated, "(1) That on

---

[2] Moreno was also charged with two counts of second degree unlawful possession of a firearm. He pleaded guilty to one charge, and the court dismissed the other charge.

3

or about the 8th day of April, 2018, the defendant entered or remained unlawfully in a building." CP at 128.

The jury instructions provided a definition of "entering or remaining unlawfully" that mirrored the statutory definition: "A person enters or remains unlawfully in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." CP at 132; RCW 9A.52.010(2). No objection was raised at the trial court challenging the charging document or jury instructions.

The jury convicted Moreno on all counts. The court sentenced Moreno to 364 days for both his fourth degree assault and interfering with domestic violence reporting convictions, and to a 48-month term with 18 months' community custody for his first degree burglary conviction. The court ran the sentences concurrently.

Moreno appealed his conviction, arguing for the first time, in part, that his conviction for first degree burglary should be reversed because the charging document and jury instructions omitted an implied essential element that a defendant have knowledge of the unlawfulness of the entering or remaining. Division One of the Court of Appeals rejected Moreno's argument.

Moreno then sought discretionary review in this court, and we granted review limited to the issue of whether knowledge of the unlawfulness of entering or remaining is an implied essential element of burglary. *State v. Moreno*, 14 Wn.

*State v. Moreno*, No. 99147-2

App. 2d 143, 470 P.3d 507 (2020), *review granted in part*, 196 Wn.2d 1042 (2021).

ANALYSIS

Moreno alleges constitutional error, claiming the charging document and the "to convict" jury instructions omitted an implied essential element, arguing that a charging document is constitutionally deficient unless it contains both the statutory and nonstatutory essential elements of a crime. *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991). We review charging documents de novo. Further, it is reversible error if the "to convict" jury instructions relieve the State of its burden to prove each element beyond a reasonable doubt. *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002). It is undisputed that knowledge of the unlawfulness of entering or remaining was not included in the charging document or the "to convict" instructions. If we accept Moreno's argument that such knowledge is an implied essential element of first degree burglary, then both the charging document and the instructions were constitutionally deficient and reversal is necessarily required.

Determining whether an implied essential element exists starts as a question of statutory construction, which we review de novo. "[W]e have concluded that nonstatutory elements are implied either because they fit within long-standing principles of law or are derived from our reasoned judgment as to legislative

5

intent." *State v. Miller*, 156 Wn.2d 23, 28, 123 P.3d 827 (2005). We have recently

discussed the animating principles involved in impliedly adding a mens rea

element to a criminal statute.

> In general, "[w]e construe statutes to avoid constitutional
> doubt." But we construe statutes only "to avoid constitutional
> difficulties when such construction is consistent with the purposes of
> the statute."
> In many cases, these statutory interpretation rules have led the
> United States Supreme Court and this court to read mens rea elements
> into statutes *where the legislature omitted them*.
> This line of cases does not explicitly discuss the constitutional
> limits of the police power—it emphasizes interpreting each statute in
> light of "the background rules of the common law, in which the
> requirement of some mens rea for a crime is firmly embedded." But
> they reflect a consistent concern about criminalizing fundamentally
> innocent conduct.

*State v. Blake,* 197 Wn.2d 170, 188-89, 481 P.3d 521 (2021) (alteration in original)

(emphasis added) (citations omitted) (quoting *Utter ex rel. State v. Bldg. Indus.*

*Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953 (2015); *In re Pers. Restraint of*

*Williams*, 121 Wn.2d 655, 665, 853 P.2d 444 (1993); *Staples v. United States*, 511

U.S. 600, 605, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994)). Thus, as a general

proposition, we are primarily concerned with adding mens rea elements to strict

liability criminal statutes that otherwise would have no mental state. Moreover, we

normally imply mens rea elements to such statutes to avoid criminalizing otherwise

innocent conduct in possible violation of due process principles.

*State v. Moreno*, No. 99147-2

Under this statutory challenge, the first step in the analysis is to turn to the statute's language and possibly to neighboring provisions and the statutory scheme for additional guidance.

The statute defining first degree burglary provides:

> A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.

RCW 9A.52.020(1).[3]

First degree burglary is defined in chapter 9A.52 RCW, which also defines the crimes of criminal trespass and vehicle prowling. Chapter 9A.52 RCW includes definitions of general terms that apply to each of the three crimes. As significant here, the statute provides a definition of when a person enters or remains unlawfully: "A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2).

---

[3] The three statutes defining the various degrees of burglary have identical language with regard to the requirements that an accused "enters or remains unlawfully" with an "intent to commit a crime against a person or property." *See* RCW 9A.52.020(1), .025(1), .030(1). The main differences in these statutes is the type of burglarized premises and the presence of aggravating circumstances.

*State v. Moreno*, No. 99147-2

Both parties agree that knowledge of the unlawfulness of entering or remaining is not a statutory element of first degree burglary[4] and that the statute contains a mens rea element by requiring proof of an intent to commit a crime. Because of this, the burglary statute cannot be characterized as a strict liability crime, which is the traditional context in which we analyze whether adding a mens rea element is required. Moreno argues, though, that notwithstanding the statutory element of an intent to commit a crime, we should imply an additional mens rea element. Moreno does not cite to any cases where we have implied a mens rea element to a statute that has an existing mental element. And he similarly cites to no out of state cases in support of adding an implied mens rea element to a burglary statute or any case invalidating such a statute on the basis that it does not contain an additional mens rea element.

---

[4] The "to convict" Washington pattern jury instruction for first degree burglary given in this case mirrors the statutory language:

"To convict the defendant of the crime of burglary in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about (date) the defendant entered or remained unlawfully in a building;

"(2) That the entering or remaining was with intent to commit a crime against a person or property therein;

"(3) That in so entering or while in the building or in immediate flight from the building [the defendant] [or] [an accomplice in the crime charged] [was armed with a deadly weapon] [or] [assaulted a person]; and

"(4) That any of these acts occurred in the State of Washington." 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 60.02, at 5 (5th ed. 2021).

8

*State v. Moreno*, No. 99147-2

We have not analyzed whether a defendant's knowledge of the unlawfulness of their entering or remaining is an implied essential element of first degree burglary. The Court of Appeals in *Kilponen* rejected a defendant's argument that jury instructions were constitutionally deficient by omitting such an implied element. *State v. Kilponen*, 47 Wn. App. 912, 737 P.2d 1024 (1987). First, the Court of Appeals noted that it need not consider this argument because the defendant had invited the error. Nonetheless, the court proceeded to analyze the argument, concluding that "RCW 9A.52.020 does not require the State to prove the defendant knew he was acting unlawfully." *Kilponen*, 47 Wn. App. at 919. Instead, the court concluded that an intent to commit a crime is the only mens rea element in the first degree burglary statute. *Kilponen*, 47 Wn. App. at 919.

Although this court has not directly addressed whether knowledge of the unlawfulness of the entering or remaining is an essential element of first degree burglary, we have noted that the "[t]he intent required by our burglary statutes is simply the intent to commit any crime against a person or property inside the burglarized premises." *State v. Bergeron,* 105 Wn.2d 1, 4, 711 P.2d 1000 (1985). Combining that description of the mens rea in the statute with the analysis in *Kilponen*, the Court of Appeals in this case concluded that the plain language of

9

the statute defining first degree burglary shows that no additional mens rea requirement impliedly exists.[5] We agree.

The surrounding provisions in chapter 9A.52 RCW confirm the conclusion that burglary has no additional implied mens rea element. For any burglary charge, if an accused entered or remained unlawfully, a permissible inference arises that the accused acted with the requisite criminal intent to commit a crime unless other evidence is presented. RCW 9A.52.040.[6] This statutory inference is permitted without requiring that the defendant know that their entering or remaining was unlawful. Also, criminal trespass is the only crime in chapter 9A.52 RCW that the legislature statutorily provided defenses, including that an accused "reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him or her to enter or remain." RCW 9A.52.090(3). This defense is related to the element of criminal trespass that a

---

[5] The Court of Appeals also rejected Moreno's argument that because knowledge of the unlawfulness of entering or remaining is a statutory element of first degree criminal trespass, then it is also an element of first degree burglary. The court declined to follow the reasoning in *State v. Soto*, 45 Wn. App. 839, 727 P.2d 999 (1986), which concluded that first degree criminal trespass was a lesser included offense of second degree burglary. Because this case involves a challenge to the adequacy of the charging document and jury instructions, and since Moreno did not request a lesser included instruction for criminal trespass, we need not address any claimed conflict between the elements of burglary and criminal trespass.

[6] The statute provides the following: "In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent."

10

*State v. Moreno*, No. 99147-2

defendant "know" that their entering or remaining was unlawful. *See* RCW

9A.52.070(1). The general statutory definition of "knowledge" states:

> A person knows or acts knowingly or with knowledge when:
>> (i) He or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
>> (ii) *He or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.*

RCW 9A.08.010(1)(b) (emphasis added). Therefore, the defense that an accused

has a reasonable belief that their entering or remaining was lawful excuses a

criminal trespass because it shows an accused lacked knowledge of the

unlawfulness of their entering or remaining. Were that defense to apply to

burglary, it could support the conclusion that knowledge of unlawfully entering or

remaining is also an essential element of burglary. But this reading does not

comport with the intent to commit a crime element for first degree burglary.

Again, we have not directly analyzed whether this defense is available to any

burglary charge, but in *State v. Montague*, 10 Wn. App. 911, 521 P.2d 64 (1974),

the Court of Appeals considered a defendant's argument that the trial court should

have allowed him to present a jury instruction to a former first degree burglary

statute[7] that it was a defense if the defendant reasonably believed that the owner of

---

[7] The prior version of the statute defined the crime in relevant part as "[e]very person who, with intent to commit some crime therein, shall enter in the night time, the dwelling house of another." LAWS OF 1909 ch. 249, § 326 (*codified as* former RCW 9.19.010 (1909)).

11

the home consented to the defendant burglarizing the home. While observing that the mens rea element for burglary was the intent to commit a crime, the court also highlighted that a defendant who "unlawfully" entered raised a rebuttable presumption that the defendant had an intent to commit a crime. LAWS of 1909, ch. 249, § 328 (*codified as* former RCW 9.19.030 (1909)). Thus, the court stated that unlawful entry "implies the existence of a 'guilty mind,'" which might be negated by the defendant's reasonable belief he was authorized to be in the home. *Montague*, 10 Wn. App. at 918. But the court held the defendant's alleged reasonable belief lacked good faith because the defendant would have been a participant in a crime even assuming he had consent to burglarize the home.

*Montague*'s statement that unlawful entry presumes a "guilty mind" under the former statutory scheme governing burglary does not apply under the current definitions of burglary to show that knowledge is required for unlawfully entering or remaining. First, the *presumption* of criminal intent from unlawful entry under the former statute, former RCW 9.19.030, was revised to include a *permissible inference* of intent in the current statutory scheme. *See* RCW 9A.52.040. This change breaks the connection between these elements. Moreover, the former statutory scheme provided no definition of unlawful entry, but the current scheme provides a definition of unlawfully entering or remaining that does not include any mens rea element. RCW 9A.52.010(2). It follows that the inference that an accused

acts with criminal intent when they unlawfully entered or remained does not similarly show that a "guilty mind" is required for unlawfully entering or remaining under the current scheme.

Although the various divisions of the Court of Appeals appear to differ regarding whether the statutory defenses to criminal trespass are available for a burglary charge under the current statutory scheme, these cases all demonstrate that knowledge of the unlawfulness of entering or remaining is not an implied essential element of burglary because they conclude that the statutory definition of unlawfully entering or remaining, which does not contain a mens rea element, is controlling for a burglary charge. RCW 9A.52.010(2).

Division Three of the Court of Appeals has concluded the reasonable belief defense to criminal trespass could negate the unlawful entering or remaining element for a burglary charge. *State v. Ayala Ponce*, 166 Wn. App. 409, 269 P.3d 408 (2012). However, in *Ponce*, the court reasoned that the "to convict" jury instructions correctly stated the law by mirroring the statutory definition of the element of unlawfully entering or remaining. Because the instructions did not prevent the defendant from arguing he had a reasonable belief that he was permitted in the building, the court found no error in failing to give the instruction on the reasonable belief defense. *See also State v. Cordero*, 170 Wn. App. 351, 370, 284 P.3d 773 (2012) (clarifying that as long as the instructions correctly

informed the jury of the applicable law on burglary, then a defendant was not entitled to a jury instruction on a statutory defense to criminal trespass).

Division Two of the Court of Appeals has concluded the statutory defenses to criminal trespass should not be provided for any burglary charge. *State v. Jensen*, 149 Wn. App. 393, 401, 203 P.3d 393 (2009). In *Jensen*, the court emphasized that the statute's plain language explicitly applies those defenses only to criminal trespass. RCW 9A.52.090 ("In any prosecution under RCW 9A.52.070 [describing first degree criminal trespass] and 9A.52.080 [describing second degree criminal trespass], it is a defense that . . . ."). The court declined to expand those statutory defenses to other crimes. *Jensen*, 149 Wn. App. at 401.[8]

*Jensen*'s conclusion that the statutorily enumerated defenses to criminal trespass, including a reasonable belief that one is authorized to enter or remain, do not apply to a burglary charge supports our decision that knowledge of the unlawfulness of the entering or remaining is not an element of first degree burglary.

To the extent that Division Three cases suggest otherwise, they hold that as long as the "to convict" instruction uses the statutory definition of unlawfully entering or remaining, then no error exists because juries are apprised of the

---

[8] Division One of the Court of Appeals has agreed with *Jensen*'s analysis. *State v. Olson*, 182 Wn. App. 362, 377, 329 P.3d 121 (2014).

14

*State v. Moreno*, No. 99147-2

applicable law and the defendant is able to argue their theory of the case.[9] Thus, all these cases support the conclusion that knowledge of unlawfully entering or remaining is not an implied element because they recognize that the statutory language for unlawfully entering or remaining controls, which includes no knowledge requirement as applied to a burglary charge.

But Moreno makes three arguments in support of his contention that we should imply an element of knowledge of the unlawfulness of entering or remaining into the first degree burglary statute. First, Moreno argues that the presumption in favor of mens rea supports his view that the State must prove knowledge that the entering or remaining was unlawful for first degree burglary. Suppl. Br. of Pet'r at 5-7. Generally, conduct must be accompanied by "culpable state of mind" in order to be considered criminal. *Morissette v. United States*, 342 U.S. 246, 250, 72 S. Ct. 240, 96 L. Ed. 288 (1952). As previously noted, we normally imply mens rea elements when a constitutional infirmity exists in a strict liability criminal statute, such as when a mens rea element is necessary to avoid criminalizing otherwise innocent conduct. *See, e.g.*, *State v. Williams*, 158 Wn.2d 904, 908-16, 148 P.3d 993 (2006) (reading in a mens rea requirement to unlawful possession of a firearm pursuant to RCW 9.41.190(1)); *State v. Anderson*, 141

---

[9] Significantly, Moreno does not show that he was unable to argue his theory that he was in the townhome lawfully, and the jury was provided with the instructions that mirrored the language of the statute for unlawfully entering or remaining.

15

Wn.2d 357, 360-67, 5 P.3d 1247 (2000) (same for RCW 9.41.040)). Because the first degree burglary statute requires proof of an intent to commit a crime, these cases alone do not provide a basis to analyze whether first degree burglary requires knowledge that the entry and remaining is unlawful in addition to requiring intent to commit a crime. We are not persuaded an additional mens rea element is required.

In support of a broader view of how the presumption of mens rea may still apply to statutes containing a mens rea element, Moreno cites to United States Supreme Court cases involving statutory interpretation of a general "knowledge" requirement, where the Court has highlighted "that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72, 115 S. Ct. 464, 130 L. Ed. 2d 372 (1994). But here, given that burglary requires intent to commit a criminal act, innocent conduct is lacking.

The Court applied this principle to a federal statute that made it a crime to "'knowingly'" violate the prohibition on various persons, including those aliens who are "'illegally or unlawfully in the United States,'" from possessing a firearm. *Rehaif v. United States*, 588 U.S. ___, 139 S. Ct. 2191, 2194, 204 L. Ed. 2d 594 (2019) (quoting 18 U.S.C. §§ 924(a)(2) (emphasis omitted), 922(g)(5)(A)). The Court recognized that the presumption in favor of mens rea "applies with equal or

16

greater force when Congress includes a general scienter provision in the statute itself." *Rehaif*, 139 S. Ct. at 2195. The Court concluded the statute required proof that the defendant knew they possessed a firearm and knew they were in the United States illegally or unlawfully. The Court reasoned if it did not apply knowledge to each element in the statute, then the statute would punish innocent conduct. If one did not know of their status as being illegally or unlawfully in the United States, then they could still be convicted of the crime even if they were partaking in the entirely innocent conduct of possessing a gun with appropriate licensing. *Rehaif*, 139 S. Ct. at 2197. The defendant's "status is the 'crucial element' separating innocent from wrongful conduct." *Rehaif*, 139 S. Ct. at 2197 (quoting *X-Citement Video*, 513 U.S. at 73). The Court distinguished other statutes involving a "status" element because the prohibited conduct, such as misappropriation of the government information by a government employee or contractor, would be wrongful regardless of the defendant's status. *See* 18 U.S.C. § 1924(a).

Based on these cases, Moreno argues that the presumption of mens rea "applies to each essential element of an offense." Suppl. Br. of Pet'r at 6. However, Moreno reads these cases too broadly, and we reject this reasoning. First, these cases involved interpreting a general knowledge requirement, modifying the whole statute or set out at the beginning of a statute, and the extent to which it applied to different elements of the statute. Unlike those statutes, Moreno does not show that

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the intent to commit a crime under the first degree burglary statute also modifies the element of unlawfully entering or remaining.

Moreover, unlawfully entering or remaining in the first degree burglary statute is not the crucial element differentiating between wrongful and innocent conduct like the defendant's status in *Rehaif*. Assuming a person does not know that their presence is unauthorized, the State is still required to prove the intent to commit a crime. Intent to commit a criminal act is wrongful conduct unlike possession of a firearm in *Rehaif*. And as the State points out, knowledge was attached to the unlawfully entering or remaining element of criminal trespass because that statute would otherwise have no mens rea requirement. *See, e.g.*, RCW 9A.52.070(1); Suppl. Br. of Resp't at 8.

Amicus argues that unlawfully entering or remaining is the element that differentiates between whether conduct constitutes the felony of first degree burglary or a misdemeanor. Br. of WACDL (Wash. Ass'n of Criminal Def. Lawyers) as Amicus Curiae at 10-12. Given that a mere intent to commit a crime on a premises could alone be a misdemeanor, amicus contends that a mens rea must attach to the unlawfully entering or remaining element because that element raises the penalty to a felony. But an element that differentiates between a felony and a misdemeanor is not the same as an element that differentiates between innocent and criminal conduct. Here, the legislature determined that the element of

18

*State v. Moreno*, No. 99147-2

unlawfully entering or remaining when accompanied by an intent to commit a crime should be punished more harshly than a mere intent to commit a crime. RCW 9A.04.020(1)(d) (stating that it is a purpose of the statutes defining criminal offenses "[t]o differentiate on reasonable grounds between serious and minor offenses, and to prescribe proportionate penalties for each").

Our cases presenting similar issues of statutory construction support this conclusion. For example, in *State v. Brown*, we rejected an argument to imply an element to third degree assault of a police officer that a defendant know the victim was an officer and that the officer was performing their duties at the time of the assault. 140 Wn.2d 456, 467, 998 P.2d 321 (2000) (citing RCW 9A.36.031(1)(g)). In that case, while the State needed to prove that a defendant intended to assault the victim, we concluded the plain language of the statute did not include a requirement that the defendant know that the victim was a police officer or performing their duties. We noted that the legislature had included knowledge of the victim being a police officer in other statutes, and that the legislature was permitted to make a choice not to include it in the third degree assault statute. *Brown*, 140 Wn.2d at 469.

Second, Moreno argues that our cases analyzing the unlawfully enters or remains element and the common law offense of burglary support the existence of an implied essential element. Suppl. Br. of Pet'r at 8-13. Moreno contends our

19

cases show that knowledge of a license or privilege and its scope are fundamental parts of the unlawfully entering or remaining element. Moreno draws on cases analyzing when a child's presumptive privilege to be in a home is revoked. *State v. Howe*, 116 Wn.2d 466, 805 P.2d 806 (1991). In that case, we reasoned that a parent can revoke a child's privilege to be in the family home only "if they (1) do so expressly and unequivocally, and (2) provide some alternative means of assuring that the parents' statutory duty of care is met." *Howe*, 116 Wn.2d at 477. The revocation must "be clearly and unequivocally conveyed to the child." *Howe*, 116 Wn.2d at 470.

Moreno also relies on cases analyzing the notice required for a revocation of an invitation for a premises open to the public. *See State v. Kutch*, 90 Wn. App. 244, 248-49, 951 P.2d 1139 (1998). However, we find this analysis consistent with the statutory scheme, which requires notification that a person is not licensed or privileged in certain situations involving public places. *See* RCW 9A.52.010(2) ("A license or privilege to enter or remain on improved and apparently used land that is open to the public at particular times, which is neither fenced nor otherwise enclosed in a manner to exclude intruders, is not a license or privilege to enter or remain on the land at other times if notice of prohibited times of entry is posted in a conspicuous manner.").

*State v. Moreno*, No. 99147-2

Moreno further argues that cases involving implied limitations on invitations show the importance of knowledge of the unlawfulness of the entering or remaining. *State v. Collins,* 110 Wn.2d 253, 261, 751 P.2d 837 (1988). In *Collins*, we held that an implied limitation on or revocation of a license may exist depending on the circumstances. In that case, a defendant was invited into a home to use a phone without express limits on the scope of that license but then committed a rape and assault once he entered the home. We noted other cases in which an apparently general invitation to enter was provided, but the "limitation was plain from the circumstances, and was sufficient to support [a] burglary conviction." *Collins*, 110 Wn.2d at 260. We held the invitation was limited to the use of the phone only, and therefore the defendant's entering or remaining was unlawful by exceeding the scope of the invitation. The defendant's license was essentially revoked once he began assaulting the two victims, and we affirmed the burglary conviction.

The cases involving revocation of a child's license to be in a family home are not fully applicable to adults like Moreno based on the unique aspects of the parent-child relationship. Moreover, in these cases, a license or privilege to enter is granted, which would tend to negate the element of entering or remaining unlawfully needed for burglary. A revocation of that license or privilege has the effect of turning someone's presence from lawful to unlawful, which is why notice

21

*State v. Moreno*, No. 99147-2

is required. On the other hand, when a license or privilege is never granted, no notice of revocation is required because no authorization exists in the first place. To the extent that these cases discuss a notice requirement, we find that reasoning inapplicable here because they involve revocation of an existing license or privilege.

Next, Moreno argues that the common law definition of burglary shows that knowledge of the unlawfulness of entering and remaining is an implied essential element. The common law supplements our criminal statutes but only to the extent that the common law is not inconsistent with a statute. RCW 9A.04.060. Under the common law, burglary was once defined "to be the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony." *State v. Engel*, 166 Wn.2d 572, 579, 210 P.3d 1007 (2009) (citing 3 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 21.1 (2d ed. 2003)). But statutory offenses defining burglary have significantly changed the elements of burglary, and the "modern-day offense commonly known as burglary bears little relation to its common-law ancestor." 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 21.1, at 268 (3d ed. 2018 & Supp. 2020).

In *Bergeron*, for example, we held that an intent to commit a specific crime was not required under our statutory definitions for burglary. 105 Wn.2d at 14-15. Although the common law definition may have supported the opposite conclusion,

22

we emphasized that the statutory definition of burglary required only an intent to commit any crime. We reasoned that where "'a statute is plain and unambiguous, it must be construed in conformity to its obvious meaning without regard to the previous state of the common law.'" *Bergeron*, 105 Wn.2d at 15 (quoting *State ex rel. Madden v. Pub. Util. Dist. No. 1*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973)).

Nonetheless, Moreno points to the "breaking and entering" element of common law burglary, "which requires that the burglar intentionally engage in the conduct of breaking and entering, and perhaps also that he intend that the building thus broken into be a dwelling house." 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 5.2(a), at 458 (3d ed. 2018 & Supp. 2020). However, the concepts of breaking and nighttime entry were removed from the current statutory definition of burglary.[10] Moreno argues that we considered the breaking and entering element of common law burglary in *Engel*. Suppl. Br. of Pet'r at 10-11. But *Engel* utilized the common law definition of burglary to analyze what was considered a "fenced area," which was necessary because the statute did not provide a definition. 166 Wn.2d at 579-80. Here, we have a statutory definition of unlawfully entering and remaining. RCW 9A.52.010(2). The common law crime of

---

[10] The concepts of breaking and nighttime entry were initially part of the statutory definitions of either first degree or second degree burglary. *See* LAWS OF 1909, ch. 249, §§ 326, 327 (*codified as* former RCW 9.19.010, .020).

burglary does not support Moreno's contention that we should rewrite the current statutory definitions.

Last, Moreno contends that because first degree criminal trespass has been considered by some cases as a lesser included offense of first degree burglary, knowledge of the unlawfulness of entering or remaining is an implied essential element of burglary.[11] The parties dedicate significant discussion to the mental elements of criminal trespass and burglary. But the State contends that we need not address whether criminal trespass is a lesser included offense of burglary because Moreno never sought a lesser included instruction, which means that anything we would decide on that issue would be dicta. Suppl. Br. of Resp't at 16-17; *State ex rel. Lemon v. Langlie*, 45 Wn.2d 82, 89, 273 P.2d 464 (1954).

The State is correct that a decision on whether first degree criminal trespass is a lesser included offense is not necessary to deciding this case. The only issue presented by this case is whether knowledge of the unlawfulness of entering or remaining is an implied essential element of first degree burglary. We affirm the Court of Appeals and hold that such knowledge is not an implied element of first degree burglary based on the plain language of the first degree burglary statute. We conclude the cases suggesting that criminal trespass is a lesser included offense of

---

[11] *See, e.g.*, *Olson*, 182 Wn. App. at 375; *State v. J.P.*, 130 Wn. App. 887, 895, 125 P.3d 215 (2005); *State v. Allen*, 127 Wn. App. 945, 950, 113 P.3d 523 (2005); *Soto*, 45 Wn. App. at 841.

*State v. Moreno*, No. 99147-2

burglary have no bearing on the analysis of whether an implied element to burglary is constitutionally required.

_____
Johnson, J.

WE CONCUR:

_____          _____

_____          _____
                                                        Yu, J.

_____          _____
Owens, J.

_____          _____
Stephens, J.                                          Whitener, J.

25

*State v. Moreno*, No. 99147-2 (González, C.J., concurring)

No. 99147-2

GONZÁLEZ, C.J. (concurring) – I concur with the majority.  I write separately to stress that trespass and burglary are different crimes with different mental states.  At its core, burglary is entering or unlawfully remaining on someone else's property with the intent to commit a different crime there.  The mental state for burglary is the intent to commit some other crime. Trespass, however, is entering or remaining on someone else's property knowing it is unlawful to do so.  The mental state for trespass is knowing there is no authority to be on someone else's property and entering or remaining anyway. These crimes might overlap as a matter of fact, but as a matter of law they are distinct.  I would take this opportunity to make that clear.

A lesser included offense of a charged offense is established if "each of the elements of the lesser offense" is "a necessary element of the offense *charged*" and if "the evidence in the case . . . support[s] an inference that the lesser crime was committed."  *State v. Berlin*, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997) (emphasis added) (citing and reinstating the rule set forth in *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)).  Under *Workman*, trespass is not a lesser included offense of burglary because trespass requires the person to *knowingly* enter or remain unlawfully, and burglary does not.

1

*State v. Moreno*, No. 99147-2 (González, C.J., concurring)

It is true that both trespass and burglary contain a mens rea element, but these mens rea elements do not relate to the same action. I recognize that in *State v. Soto*, the Court of Appeals held that trespass is a lesser included offense of burglary because proof of intent, required in burglary, is a higher mens rea than the knowledge required in criminal trespass. 45 Wn. App. 839, 840-41, 727 P.2d 999 (1986); *compare* RCW 9A.52.070(1) (a "person is guilty of criminal trespass in the first degree if he or she *knowingly* enters or remains unlawfully in a building" (emphasis added)), *with* RCW 9A.52.020(1) (a "person is guilty of burglary . . . if, with *intent* to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building" (emphasis added)). But *Soto* was incorrect because the mens rea of burglary corresponds to a different action than knowledge does in trespass.[1] *See State v. Gamble*, 154 Wn.2d 457, 468, 114 P.3d 646 (2005) (for a lesser included offense, the mens rea must pertain to the same conduct); *see also State v. Numrich*, 197 Wn.2d 1, 15, 480 P.3d 376 (2021).

With these observations, I respectfully concur.

González, C.J.

Montoya-Lewis, J.

---

[1] Moreno argued that this court held trespass is a lesser included offense in *State v. Southerland*, but, based on the arguments presented, *Southerland* presumed error and focused on prejudice. 109 Wn.2d 389, 390-91, 745 P.2d 33 (1987). It did not independently analyze the elements of the crimes.

*State v. Moreno (Francisco Ruben)*

No. 99147-2

MADSEN, J. (concurring)—I agree with the majority that knowledge is not an implied, essential element of burglary. However, I go on to analyze whether proof that the defendant entered or remained in a building with intent to commit a crime is sufficient to prove that the defendant knowingly entered or remained in the building unlawfully. I believe that it does, and therefore, I write separately to state that in my view, criminal trespass is a lesser included offense of burglary.

For the court to instruct on a lesser included offense, each of the elements of the lesser offense must be a necessary element of the offense charged and the evidence in the case must support an inference that the lesser crime was committed. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). If it is possible to commit the greater offense without committing the lesser offense, the lesser offense is not an included offense. *State v. Stevens*, 158 Wn.2d 304, 315, 143 P.3d 817 (2006).

Chapter 9A.52 RCW governs both burglary and trespass offenses. Criminal trespass in the first degree requires the defendant to knowingly enter or remain unlawfully in a building. RCW 9A.52.070(1). Burglary requires that the defendant "with

No. 99147-2
Madsen, J., concurring

intent to commit a crime against a person or property therein . . . enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030(1).[1]

In evaluating whether criminal trespass is a lesser included offense of burglary, it must not be possible to commit burglary without also committing criminal trespass. Burglary requires proof that an individual entered or remained unlawfully in a building with intent to commit a crime against a person or property. When an individual enters into a building with intent to commit a crime against a person or property, or develops that intent while inside the building, they are in the building unlawfully. Although that individual's presence may have been lawful absent the intent to commit a crime, it is the intent to commit a crime that renders the entering or remaining unlawful. Thus, an individual who enters or remains in a building with intent to commit a crime necessarily has the intent to enter or remain unlawfully. This means a person may enter a building lawfully, but remaining in the building may become unlawful either because that person develops an intent to commit a crime or, in the case of trespass, for some other reason, such as being asked to leave by a rightful owner.

Under the hierarchy of mental states, "[w]hen acting knowingly suffices to establish an element, such element also is established if a person acts intentionally." RCW 9A.08.010(2); *see State v. Shipp*, 93 Wn.2d 510, 518, 610 P.2d 1322 (1980); *State v. Thomas*, 98 Wn. App. 422, 425, 989 P.2d 612 (1999). Thus, proof that an individual

---

[1] This is the standard for second degree burglary. First degree burglary has the same standard, but it also requires the additional element that the person is either armed with a deadly weapon or assaults any person. RCW 9A.52.020(1).

2

intends to enter or remain unlawfully in a building is sufficient to prove that the

individual enters or remains knowingly. Accordingly, each of the elements of criminal

trespass is a necessary element of burglary, making criminal trespass a lesser included

offense.

Washington courts have consistently recognized trespass as a lesser included

offense of burglary. *See, e.g.*, *State v. Garcia*, 179 Wn.2d 828, 849, 318 P.3d 266 (2014)

(noting that a conviction for burglary required the defendant to not only trespass but also

intend to commit a crime inside the building); *State v. Allen*, 101 Wn.2d 355, 359, 678

P.2d 798 (1984) (stating the defendant's state of mind is the element separating burglary

from the lesser included offense of criminal trespass); *State v. Southerland*, 109 Wn.2d

389, 390, 745 P.2d 33 (1987) (agreeing with the Court of Appeals' legal analysis that first

degree criminal trespass is a lesser included offense of first degree burglary); *State v.*

*Olson*, 182 Wn. App. 362, 375, 329 P.3d 121 (2014) ("Criminal trespass in the first

degree is a lesser included offense of burglary in the second degree."); *State v. Allen*, 127

Wn. App. 945, 951, 113 P.3d 523 (2005) (stating that there is no question that each

element of first degree criminal trespass is a necessary element of burglary); *State v. J.P.*,

130 Wn. App. 887, 895, 125 P.3d 215 (2005) ("Criminal trespass is a lesser included

offense of burglary"); *State v. Soto*, 45 Wn. App. 839, 841, 727 P.2d 999 (1986) (noting

that "proof of second degree burglary is necessarily proof of first degree criminal

trespass" because burglary has a higher mental state requirement); *State v. Mounsey*, 31

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Wn. App. 511, 517-18, 643 P.2d 892 (1982) (holding that first degree criminal trespass is a lesser included offense of first degree burglary).

This court applied similar logic when analyzing whether second degree criminal trespass is a lesser included offense of second degree vehicle prowling. *State v. Joseph*, 189 Wn.2d 645, 405 P.3d 993 (2017). In *Joseph*, we concluded that second degree trespass is a lesser included offense of second degree vehicle prowling. *Id*. at 653. The elements for second degree vehicle prowling parallel the elements of second degree burglary. RCW 9A.52.100(1) ("A person is guilty of vehicle prowling in the second degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a vehicle other than a motor home."). The only difference is that the individual enter or remain unlawfully, with intent to commit a crime, in a vehicle rather than a building. The court held that second degree criminal trespass may occur when an individual knowingly enters or remains unlawfully in a vehicle. *Joseph*, 189 Wn.2d at 653. The only difference between the statutes applied in *Joseph* and the present case is the location where the unlawful entering or remaining took place. Thus, by concluding that second degree trespass is a lesser included offense of second degree vehicle prowling, the court affirmed that intent to commit a crime in a location (vehicle or dwelling) is sufficient to meet the knowledge requirement in the criminal trespass statute.

In this case, Moreno argued that the charging documents and jury instructions were constitutionally deficient because they omitted an implied essential element of

No. 99147-2
Madsen, J., concurring

knowledge of the unlawfulness of entering or remaining for first degree burglary. I agree with the majority that knowledge is not an implied essential element of burglary. Additionally, for the reasons discussed, I would hold that the element of knowledge of unlawfulness is satisfied if the State can prove that the defendant entered or remained unlawfully with intent to commit a crime. Accordingly, I would reaffirm that criminal trespass is a lesser included offense of burglary.

With these observations, I concur.

_____
Madsen, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Moreno (Francisco Ruben)*, No. 99147-2
(Gordon McCloud, J., concurring)

No. 99147-2

GORDON McCLOUD, J. (concurring)—I concur with the bulk of the majority's opinion and with its conclusion. I disagree, however, with its reliance on the decision in *State v. Montague*, 10 Wn. App. 911, 521 P.2d 64 (1974), to reach its conclusion. Majority at 11-12. The *Montague* court approved of an instruction telling the jury that if it believed the defendant entered unlawfully, then it "shall"—a mandatory command—presume that the defendant had the intent to commit a crime within— "unless such . . . unlawful entry shall be explained by testimony satisfactory to the jury . . . ." 10 Wn. App. at 915 (emphasis omitted). The *Montague* court's analysis has certainly been superseded by the United States Supreme Court's decision on the same issue (of presumptions as mandatory as the one in *Montague*) five years later in *Sandstrom v. Montana*, 442 U.S. 510, 514-19, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979).

With these observations, I respectfully concur.

_____
Gordon McCloud, J.

1